UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA, MIAMI DIVISION

Case No. 1:18-cv-21618-DPG

HOMESTEAD HOSPITAL, INC., WEST
KENDALL BAPTIST HOSPITAL, INC.,
BAPTIST HOSPITAL OF MIAMI, INC.,
SOUTH MIAMI HOSPITAL, INC., BHS
AMBULATORY SURGERY CENTER
AT BAPTIST, LTD. D/B/A MEDICAL
ARTS SURGERY CENTER,

Plaintiffs,

v.

GROUP & PENSION
ADMINISTRATORS,
INC.,

Defendant.
_____/

## PLAINTIFFS' MOTION FOR PROTECTIVE ORDER

Plaintiffs, Homestead Hospital, Inc., West Kendall Baptist Hospital, Inc., South Miami Hospital, Inc., and BHS Ambulatory Surgery Center at Baptist, Ltd. d/b/a Medical Arts Surgery Center (together as, the "Hospitals," "Baptist Health Entities" or the "Plaintiffs"), by and through their undersigned counsel and pursuant to Rule 26, Fed. R. Civ. P., hereby move for entry of an order protecting the Baptist Health Entities from the Requests for Production Nos. 5, 6, 9 and 10 and the Interrogatories Nos. 7, 8, 9, 11, 12, 13, 14, 15 and 16 of Defendant, Group & Pension Administrators, Inc ("Administrator").

### A. BACKGROUND AND SPECIFIC DISCOVERY REQUESTS

Plaintiffs initiated this action to recover from Administrator the charges incurred for medical services rendered to patients to whom Administrator provided identification cards

1

identifying Administrator as being responsible for the patients' medical bills and with respect to whom Administrator confirmed coverage prior to admission.

In discovery, Administrator has requested a large number of documents and information concerning the Hospitals' proprietary and trade secret information concerning the following topic areas: (i) amounts received by the Hospitals including the private contractual discounts offered to certain payors who negotiate for such discounts in advance ("Other Payor Information"), (ii) the Hospitals' costs for goods and services ("Cost Information") and (iii) the Hospitals' calculation of its standard "chargemaster" pricing. In conformity with local rule 26.1(g), the Hospitals set forth below "(A) verbatim the specific item of discovery; (B) the type of protection the party requests; and (C) the reasons supporting the protection." However, for ease of reference these three categories of documents set forth above will be discussed by topic in the argument section of this Motion below.

Requests for Production[1] at issue:

| Verbatim: | 5. All invoices reflecting the purchase by the Hospital of each tangible item listed on the subject medical bills for which the Hospital contends defendant is responsible to pay. |
|---|---|
| Type of Protection Sought: | Rule 26 (c)(1)(A) and/or (G) ("forbidding the . . . discovery . . . [and/or] requiring that a trade secret or other confidential research, development, or commercial information not be revealed . . . ."). |
| Reasons Supporting Protection: | The Hospitals' cost information is a trade secret. *See* Argument Section B, 3 *infra*. |

---

[1] Administrator served on each of the Plaintiffs almost identical Requests for Production. In these discovery requests, Administrator defined the applicable Plaintiff as "Hospital." True and correct copies of the Requests for Production are attached as Composite Exhibit "A." The requests for production at issue in this Motion are identical as to each of the Plaintiffs.

2

| | |
|---|---|
| Verbatim: | 6. Any and all documentation reflecting the Hospital's policies for establishing gross charges or chargemaster rates for goods and services during the relevant time. |
| Type of Protection Sought: | Rule 26 (c)(1)(A) and/or (G) ("forbidding the . . . discovery . . . [and/or] requiring that a trade secret or other confidential research, development, or commercial information not be revealed . . . ."). |
| Reasons Supporting Protection: | The Hospitals' determination of chargemaster pricing is a trade secret. *See* Argument Section B, 2 *infra*. |

| | |
|---|---|
| Verbatim: | 9. All documents reflecting the Hospital's actual cost to provide the goods and services listed on the subject medical bills. |
| Type of Protection Sought: | Rule 26 (c)(1)(A) and/or (G) ("forbidding the . . . discovery . . . [and/or] requiring that a trade secret or other confidential research, development, or commercial information not be revealed . . . ."). |
| Reasons Supporting Protection: | The Hospitals' cost information is a trade secret. *See* Argument Section B, 3 *infra*. |

| | |
|---|---|
| Verbatim: | 10. All documents reflecting the amounts that the Hospital actually accepts or receives from other patients or payers when it provides the same or similar goods and services as those listed on the subject medical bills. |
| Type of Protection Sought: | Rule 26 (c)(1)(A) and/or (G) ("forbidding the . . . discovery . . . [and/or] requiring that a trade secret or other confidential research, development, or commercial information not be revealed . . . ."). |
| Reasons Supporting Protection: | The Hospitals' private contracts with other payors as well as amounts paid by other patients are trade secrets. *See* Argument Section B, 4 *infra*. |

Interrogatories at issue:[2]

| Verbatim: | 7. For each line item on the subject medical bills reflecting a tangible item, state: (1) the date each item was purchased by the Hospital; (2) the vendor from whom the item was purchased; (3) the price paid for the item; and (4) any way in which the Hospital increased the value of the item above the amount that the Hospital paid to purchase the item. |
|---|---|
| Type of Protection Sought: | Rule 26 (c)(1)(A) and/or (G) ("forbidding the . . . discovery . . . [and/or] requiring that a trade secret or other confidential research, development, or commercial information not be revealed . . . ."). |
| Reasons Supporting Protection: | The Hospitals' cost information is a trade secret. *See* Argument Section B, 3 *infra*. |

| Verbatim: | 8. Please state the Hospital's cost to provide the goods and/or services listed on the subject medical bills. |
|---|---|
| Type of Protection Sought: | Rule 26 (c)(1)(A) and/or (G) ("forbidding the . . . discovery . . . [and/or] requiring that a trade secret or other confidential research, development, or commercial information not be revealed . . . ."). |
| Reasons Supporting Protection: | The Hospitals' cost information is a trade secret. *See* Argument Section B, 3 *infra*. |

| Verbatim: | 9. Please describe all ways in which the Hospital determines, tracks, records, or ascertains its costs to provide goods and services to patients. |
|---|---|
| Type of Protection Sought: | Rule 26 (c)(1)(A) and/or (G) ("forbidding the . . . discovery . . . [and/or] requiring that a trade secret or other confidential research, development, or commercial information not be revealed . . . ."). |
| Reasons Supporting Protection: | The Hospitals' cost information is a trade secret. *See* Argument Section B, 3 *infra*. |

---

[2] Administrator served on each of the Plaintiffs almost identical Interrogatories. In these Interrogatories, Administrator defined the applicable Plaintiff as "Hospital." True and correct copies of the Interrogatories are attached a Composite Exhibit "B." The Interrogatories at issue in this Motion are identical as to each of the Plaintiffs.

4

|   |   |
|---|---|
|   |   |

| Verbatim: | 11. Please state the average amount paid to the Hospital for the goods and services listed on the subject medical bills during the relevant time period. |
|---|---|
| Type of Protection Sought: | Rule 26 (c)(1)(A) and/or (G) ("forbidding the . . . discovery . . . [and/or] requiring that a trade secret or other confidential research, development, or commercial information not be revealed . . . ."). |
| Reasons Supporting Protection: | The Hospitals' private contracts with other payors as well as amounts paid by other patients are trade secrets. *See* Argument Section B, 4 *infra*. |

| Verbatim: | 12. Please state the range of payments the Hospital accepted from contracted payors during the relevant time period for the goods and services on the subject medical bills. |
|---|---|
| Type of Protection Sought: | Rule 26 (c)(1)(A) and/or (G) ("forbidding the . . . discovery . . . [and/or] requiring that a trade secret or other confidential research, development, or commercial information not be revealed . . . ."). |
| Reasons Supporting Protection: | The Hospitals' private contracts with other payors as well as amounts paid by other patients are trade secrets. *See* Argument Section B, 4 *infra*. |

| Verbatim: | 13. Please describe all ways in which the Hospital determines, tracks, records, or ascertains the amounts paid to it by various payers for the goods and services provided by the Hospital. |
|---|---|
| Type of Protection Sought: | Rule 26 (c)(1)(A) and/or (G) ("forbidding the . . . discovery . . . [and/or] requiring that a trade secret or other confidential research, development, or commercial information not be revealed . . . ."). |
| Reasons Supporting Protection: | The Hospitals' private contracts with other payors as well as amounts paid by other patients are trade secrets. *See* Argument Section B, 4 *infra*. |

| Verbatim: | 14. Please state the percentage of accounts for which the Hospital collected 100% if its chargemaster rates during the relevant time period. |
|---|---|
| Type of Protection Sought: | Rule 26 (c)(1)(A) and/or (G) ("forbidding the . . . discovery . . . [and/or] requiring that a trade secret or other confidential research, development, |

| | |
|---|---|
| | or commercial information not be revealed . . . ."). |
| Reasons Supporting Protection: | The Hospitals' private contracts with other payors as well as amounts paid by other patients are trade secrets. *See* Argument Section B, 4 *infra*. |

| | |
|---|---|
| Verbatim: | 15. Please identify the persons involved in setting Hospital pricing and/or chargemaster rates. |
| Type of Protection Sought: | Rule 26 (c)(1)(A) and/or (G) ("forbidding the . . . discovery . . . [and/or] requiring that a trade secret or other confidential research, development, or commercial information not be revealed . . . ."). |
| Reasons Supporting Protection: | The Hospitals' determination of chargemaster pricing is a trade secret. *See* Argument Section B, 2 *infra*. |

| | |
|---|---|
| Verbatim: | 16. Please explain all factors considered by the Hospital or its agents when establishing chargemaster rates, including any applicable policies or procedures. |
| Type of Protection Sought: | Rule 26 (c)(1)(A) and/or (G) ("forbidding the . . . discovery . . . [and/or] requiring that a trade secret or other confidential research, development, or commercial information not be revealed . . . ."). |
| Reasons Supporting Protection: | The Hospitals' determination of chargemaster pricing is a trade secret. *See* Argument Section B, 2 *infra*. |

The Hospitals seek a protective order denying discovery as to these requests for production and interrogatories on the above grounds. In support of this Motion, the Hospitals attach the Affidavit of Eric Shatanof hereto as Exhibit "C," ("Shatanof Aff.").

## B. ARGUMENT

### 1. Legal Standard

Pursuant to Rule 26, *Federal Rules of Civil Procedure*, a party or any person from whom discovery is sought may move for a protective order. Upon such motion, "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment,

6

oppression, or undue burden or expense, including one or more of the following: (A) forbidding the . . . discovery . . . [and/or] (G) requiring that a trade secret or other confidential research, development, or commercial information not be revealed . . . ." *Id.*

Under Florida law, "[a] person has a privilege to refuse to disclose . . . a trade secret owned by that person if the allowance of the privilege will not conceal fraud or otherwise work injustice." Fla. Stat. § 90.506. When a party asserts this trade secret privilege as a basis for resisting production of certain documents or information, the court "must determine whether the information constitutes a trade secret." *American Express Travel Related Svcs., Inc. v. Cruz*, 761 So. 2d 1206 (Fla. 4th DCA 2000). A trade secret, by definition under Section 688.002, Florida Statutes (Uniform Trade Secrets Act), is:

> information, including a formula, pattern, compilation, program, device, method, technique, or process that: (a) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (b) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Fla. Stat. § 688.002.

If the court determines that the information constitutes a trade secret, the burden shifts to the party seeking production "to show reasonable necessity for the requested materials." *American Express Travel Related Svcs.*, 761 So. 2d at 1207. If the requesting party is able to establish the requisite necessity, the court must then conduct a balancing test to determine whether the requesting party's need for production outweighs the resisting party's proprietary interests. *Sheridan Healthcorp, Inc. v. Total Health Choice, Inc.*, 770 So. 2d 221, 223 (Fla. 3d DCA 2000).

Here, Administrator's Requests for Production Nos. 5, 6, 9 and 10 and Interrogatories Nos. 7, 8, 9, 11, 12, 13, 14, 15 and 16 seek documents and information that meet Florida's

statutory definition for trade secrets. Thus, the burden shifts to Administrator to show reasonable necessity for the requested materials. However, even if Administrator succeeds at this step, which it has not, Plaintiffs' proprietary interests outweigh any need Administrator might have because Administrator can seek to prove its case through expert testimony without invading the Hospitals' trade secrets. Thus, on balance, the discovery should be forbidden, the trade secrets protected and the court properly should enter a protective order.

### 2. *The Hospitals' Pricing Methodologies are Trade Secrets*

The Hospitals maintain a "chargemaster" listing the prices that they charge for various services that they provide. Shatanof Aff., ¶ 2. These chargemasters are updated and reviewed on a continual basis. Shatanof Aff., ¶ 2. It is industry standard for hospitals to bill for their services using the rates set forth in the chargemasters. Shatanof Aff., ¶ 2. These chargemasters are reviewed on a regular basis and benchmarked against the rates of other acute care hospitals in the community. Shatanof Aff., ¶ 2. The Hospitals' chargemaster rates are applied uniformly across the board to all patients to establish the charge for services rendered. Shatanof Aff., ¶ 2.

In its Request for Production No. 6, Administrator seeks "policies for establishing gross charges or chargemaster rates for goods and services during the relevant time." In its Interrogatories Nos. 15, and 16, respectively, Administrator asks Plaintiffs to "identify the persons involved in setting Hospital pricing and/or chargemaster rates," and to "explain all factors considered by the Hospital or its agents when establishing chargemaster rates." Importantly, the methodology used to set the chargemaster prices are closely guarded trade secrets of the Hospitals. Shatanof Aff., ¶ 3. The Hospitals' records constitute trade secrets under Florida law to the extent that they reflect the department's methods, practices, formulas, criteria, analyses and/or factors for determining the Hospitals' prices. Shatanof Aff., ¶ 3. The actual

chargemaster prices at issue in this case already are set forth on the bills at issue that have been produced to Administrator. Shatanof Aff., ¶ 3. However, the formulas, criteria and methodologies used to develop the pricing of the Baptist Health Entities is a critically sensitive trade secret. Shatanof Aff., ¶ 3.

Moreover, even if the Court is inclined to find that the Administrator can establish a need for the Hospital's private price calculations and methodologies, the Hospitals' proprietary interests outweigh Administrator's need because Administrator can attempt to prove its case through expert witnesses without invading the Hospitals' trade secrets because expert witnesses have access to industry data, including the rates and charges of other area hospitals and other publicly available information concerning the reasonableness of the charges at issue. Shatanof Aff., ¶ 3. Considering and balancing these interests, the Court properly should enter a protective order with respect to Administrator's Request for Production No. 6 and Interrogatories Nos. 15 and 16.

### 3. *The Hospitals' Costs are Trade Secrets*

In Requests for Production Nos. 5 and 9 and Interrogatories Nos. 7, 8 and 9, Administrator requested documents and information related to the Hospitals' actual costs. Specifically, in Requests for Production Nos. 5 and 9, respectively, Administrator requested "invoices reflecting the purchase by the Hospital of each tangible item listed on the subject medical bills" and "documents reflecting the Hospital's actual cost to provide the goods and services listed on the subject medical bills." In Interrogatory No. 7, Administrator requested, "[f]or each line item on the subject medical bills reflecting a tangible item," the date the item was purchased, the vendor from whom the item was purchased, the price paid, and any way in which the Hospital increased the value of the item. Similarly, in Interrogatories Nos. 8 and 9,

9

Administrator asked Plaintiffs to "state the cost to provide the goods and/or services listed on the subject medical bills," and to "describe all ways in which the Hospital determines, tracks, records, or ascertains its costs to provide goods and services to patients."

The Baptist Health Entities collectively purchase in bulk and on a periodic basis the "tangible items" referred to in Administrator's Requests. Shatanof Aff., ¶ 2. Moreover, the Baptist Health Entities derive independent economic value, actual or potential, from not disclosing the details of the costs of the Baptist Health Entities, and other payors and/or providers would obtain economic value from gaining disclosure of the details of the costs of the Baptist Health Entities. Shatanof Aff., ¶ 2. Specifically, if other providers who compete with the Baptist Health Entities in the marketplace gained access to this information, they could use it to harm the Baptist Health Entities' interests and put the Baptist Health Entities at a competitive disadvantage. Shatanof Aff., ¶ 2.

It would be extremely time consuming, if not impossible, to sort through these purchases in order to identify the source of each item listed on the subject medical bills. Shatanof Aff., ¶ 2. For example, if a patient was provided an aspirin during the course of his visit at one of the Hospitals, it would be nearly, if not utterly, impossible to identify when, and from which vendor, the Hospital purchased that specific aspirin. Shatanof Aff., ¶ 2. Even if such purchases could be identified, the amounts and details of such purchases are proprietary to the Baptist Health Entities. Shatanof Aff., ¶ 2.

Because of the sheer volume of documents and information that would have to be sorted, these requests would be substantially burdensome, if at all possible, to produce. Moreover, even if Administrator can establish a need for this information, the Baptist Health Entities' proprietary interest outweighs Administrator's need because Administrator can present its case through

expert witnesses without the Baptist Health Entities' proprietary information because expert witnesses have access to industry data, including the costs of other area hospitals and other publicly available information concerning the reasonableness of the charges at issue. Shatanof Aff., ¶ 3. Considering this, the Court properly should enter a protective order prohibiting the discovery of Administrator's Requests for Production Nos. 5 and 9 and Interrogatories Nos. 7, 8 and 9.

### 4. *Payments Received from Other Payors are Trade Secrets*

The Court should likewise enter a protective order prohibiting the discovery of Administrator's Request for Production No. 10 and Interrogatories Nos. 11. 12, 13 and 14 because such information constitutes trade secrets and would be unduly burdensome to produce. Request for Production No. 10 seeks "all documents reflecting the amounts that the Hospital actually accepts or receives from other patients or payers when it provides the same or similar goods and services as those listed on the subject medical bills." Interrogatories Nos. 11 and 12 likewise request, "the average amount paid to the Hospital for the goods and services listed on the subject medical bills during the relevant time period" and the "range of payments the Hospital accepted from contracted payors during the relevant time period for the goods and services on the subject medical bills." Interrogatory No. 13 asks the Plaintiff to "describe all the ways in which the Hospital determines, tracks, records, or ascertains the amounts paid to it by various payers for the goods and services provided by the Hospital." Finally, Interrogatory No. 14 requests "the percentage of accounts for which the Hospital collected 100% of its chargemaster rates during the relevant time period."

Documents and information reflecting the amounts that the Hospital accepts or receives from other patients or payors meet the definition of trade secret contained in Section 688.002,

11

*Florida Statutes* (Uniform Trade Secrets Act), *supra*. As set forth in the affidavit of Eric Shatanof, filed contemporaneously herewith, contracts with third party payors set forth various methodologies through which the third-party payors agree to pay the Baptist Health Entities. Shatanof Aff., ¶ 5. In most cases, the reimbursement rates set forth in the agreements are a complex mix of various factors including per diem, per case, percentage of charge and combinations thereof. Shatanof Aff., ¶ 5. Per diem rates are usually a set rate per day for inpatient admission that may have different rates for medical/surgical, ICU/CCU, NICU, sick babies, well babies and OB. Shatanof Aff., ¶ 5. Per case rates are usually a fixed rate for a certain service linked to DRG (diagnostic related group) codes. Shatanof Aff., ¶ 5. Both per diem and per case rates also contain stop loss provisions that revert to a percentage of charge after certain levels of charges are reached. Shatanof Aff., ¶ 5. Percentage of charge rates usually simply discount the chargemaster rate by a certain percentage or percentages. Shatanof Aff., ¶ 5.

In many instances, the calculation takes into account factors other than the cost of providing services to any one patient. Shatanof Aff., ¶ 6. In negotiating these contracts with third party payors, many factors are taken into account including, among others, type of products offered by payor, whether the payor has "in" or "out-of-network" benefits, whether the payor has primary care gatekeepers and the product type. Shatanof Aff., ¶ 6.

The specific details of these agreements are very closely guarded trade secrets of the Hospitals. Shatanof Aff., ¶ 8. The agreements contain confidentiality provisions that prohibit disclosure of the agreements. Shatanof Aff., ¶ 8. The agreements themselves are maintained under lock and key and stored in a limited access managed care directory. Shatanof Aff., ¶ 8.

The Baptist Health Entities derive independent economic value, actual or potential, from not disclosing the details of these agreements, and other payors would obtain economic value

from gaining disclosure of the details of the agreements. Shatanof Aff., ¶ 7. The payment mix received by the Baptist Health Entities is critical to their survival. Shatanof Aff., ¶ 7. They lose money on governmentally imposed payments like Medicare and Medicaid and on uninsured who are unable to pay, which patients they are obligated by law to treat regardless of their ability to pay. Shatanof Aff., ¶ 7. Disclosure of the amounts received by the Baptist Health Entities under negotiated contractual discounts with those payors that negotiate such discounts in advance would further reduce payments to the Baptist Health Entities, threatening their very existence. Shatanof Aff., ¶ 7.

On these facts, the contracts with and amounts paid by other payors are trade secrets because they contain valuable commercial information, not known to others, that is protected from disclosure. *See Lefler v. United Healthcare of Utah, Inc.*, 72 F. App'x 818, 825 (10th Cir. 2003) (acknowledging that the "confidential and proprietary nature" of "payor-provider negotiated rates" makes them "impossible to compare"); *Liberty American Ins. Group, Inc. v. WestPoint Underwriters, L.L.C.*, 199 F. Supp. 2d 1271 (M.D. Fla. 2001) (property insurer's rating software was "trade secret" under Florida law; software had independent economic value, and insurer had taken reasonable efforts to maintain its secrecy by restricting access to its programmers, who had to sign confidentiality agreements, and third parties licensees); *Valco Cincinnati, Inc. v. N & D Machining Service, Inc.*, 492 N.E.2d 814 (Ohio 1986) (manufacturer's pricing lists involved in the manufacture of equipment and parts for a commercial glue applicator were trade secrets based on reasonable and active steps to protect and safeguard them); *SI Handling Systems, Inc. v. Heisley*, 753 F.2d 1244 (3d Cir. 1985) (manufacturer's costing and pricing information regarding a particular system that included data relating to materials, labor, overhead, profit margin, and other things, qualified for trade secret protection, since it was not

information that was readily obtainable by anyone in the industry); *HCA Health Services of Georgia, Inc. v. Employers Health Ins. Co.*, 240 F.3d 982, 997 (11th Cir. 2001) ("[a] prudent person would assume that the fee for a service is the reasonable, usual and customary fee. He would not even consider the discounted fee because it only arises out of a specified contractual relationship. The usual and customary fee is the reasonable fee and, as such, is the fee recognized by a prudent person"). *See also* Fla. Stat. § 395.3035 (2018) (expressly recognizing the confidential nature of "[c]ontracts for managed care arrangements under which the public hospital provides health care services, including preferred provider organization contracts, health maintenance organization contracts, exclusive provider organization contracts, and alliance network arrangements, and any documents directly relating to the negotiation, performance, and implementation of any such contracts for managed care or alliance network arrangements" and "[t]rade secrets, as defined in s. 688.002, including reimbursement methodologies and rates").

Likewise, Administrator cannot show a strong need for these records that would be of very limited utility because the amounts received based on a negotiated discount often involve factors having no bearing on the usual and customary charges, including the type of products offered by payor, whether the payor has "in" or "out-of-network" benefits, whether the payor has primary care gatekeepers, the prompt payment of claims, the preferred relationship status and, as to international and individual self-pay patients, the ability of the patients to make payments. Shatanof Aff., ¶ 6. *See Aetna Life Ins. Co. v. DFW Sleep Diagnostics Ctr.*, CIV.A.02-1335, 2004 WL 465229, at *5 (E.D. La. Mar. 9, 2004) ("Interrogatory Number 4 asks for information related to Contracted Providers. As stated earlier, Plaintiff and Defendants do not have a Contract. The Magistrate Judge concluded that the calculation of a negotiated price is affected by factors beyond what is simply a reasonable and customary charge for noncontractual services. The

Magistrate Judge was not clearly wrong in making that distinction"); *Huntington Hosp. v. Abrandt*, 4 Misc. 3d 1, 3, 779 N.Y.S.2d 891, 892 (App. Term 2004) ("The fact that lesser amounts for the same services may be accepted from commercial insurers or government programs as payment in full does not indicate that the amounts charged to defendant were not reasonable"); *Flushing Hosp. & Med. Ctr. v. Woytisek*, 41 N.Y.2d 1081, 1082–83, 364 N.E.2d 1120, 1122 (1977) ("For whatever may be the reasons volume of payments, promptness in paying, assurance of payment or otherwise Blue Cross is entitled to what amounts to a very substantial discount with respect to its 50% of the regular charges. The subscriber, however, is not entitled to derive any economic benefit from this independent arrangement between the hospital and Blue Cross.").

Additionally, from 2016 through March 2018, the Baptist Health Entities and their affiliates collectively have provided services to more than approximately 2,400,000 patients and billed more than approximately $21,500,000,000 on a gross basis. Shatanof Aff., ¶ 9. To sort through all of these stays and seek to identify those situations where "similar goods and services" were provided would be extremely time consuming, if not impossible. Shatanof Aff., ¶ 9. The sheer volume of documents and information that would have to be sorted through would probably take a team of experts working around the clock for several months, if it could even be done at all. Shatanof Aff., ¶ 9.

Moreover, even if such cases could be identified, it is extremely unlikely that the services would be "similar" enough to enable a meaningful comparison. Shatanof Aff., ¶ 10. In such instances, it is impossible to determine how to prorate any partial payment received against the different groups of services provided. Shatanof Aff., ¶ 10. To the extent that it is not completely impossible to do so, this process would take a second team of experts substantial time to attempt.

Shatanof Aff., ¶ 10. For instance, if a patient came to the hospital and had a single MRI, that case could be compared to all other cases where a patient came in and had a single MRI. Shatanof Aff., ¶ 10. However, in reality, most patients have a multitude of services provided. Shatanof Aff., ¶ 10. Administrator would have the Hospitals search through thousands of records to try to locate other patients that had "similar services" provided. Shatanof Aff., ¶ 10. Assuming, for the sake of argument, that such search revealed cases where some of the same services where provided but other services not similar also were provided and partial payment was received, there would be no way to determine how much of the partial payment was for the "similar" services and which part of the partial payment was for the services not "similar." Shatanof Aff., ¶ 10.

Furthermore, the Baptist Health Entities' proprietary interest outweighs any need that Administrator may establish because Administrator can seek to present its case through expert witnesses without the Hospitals' proprietary information because expert witnesses have access to industry data, including the receipts of other area hospitals and other publicly available information concerning the reasonableness of the charges at issue. Shatanof Aff., ¶ 3. *See Empire of Carolina, Inc. v. Mackle*, 108 F.R.D. 323, 326 (S.D. Fla. 1985) (denying a motion to compel where the defendant met its burden to prove a trade secret and finding the harm of disclosure outweighed the need for the records). Considering the uniquely limited utility of the information sought, and its status as a trade secret, the Court properly should sustain the Hospitals' objections and enter a protective order as to Request for Production No. 10 and Interrogatories Nos. 11, 12, 13, and 14.

WHEREFORE Plaintiffs, Homestead Hospital, Inc., West Kendall Baptist Hospital, Inc., South Miami Hospital, Inc., and BHS Ambulatory Surgery Center at Baptist, Ltd. d/b/a Medical

Arts Surgery Center, respectfully request entry of an Order protecting them from Requests for Production Nos. 5, 6, 9 and 10 and the Interrogatories Nos. 7, 8, 9, 11, 12, 13, 14, 15 and 16 of Defendant, Group & Pension Administrators, Inc. along with all other and such further relief as this Court deems appropriate under the circumstances.

    Respectfully submitted,

    ISICOFF RAGATZ
    601 Brickell Key Drive, Suite 750
    Miami, Florida 33131
    Tel.  (305) 373-3232
    Fax  (305) 373-3233

    By:  /s/Matthew L. Lines
        Eric D. Isicoff
        Florida Bar No. 372201
        isicoff@irlaw.com
        Matthew L. Lines
        Florida Bar No. 0243980
        lines@irlaw.com

*Attorneys for the Baptist Health Entities*

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this ___ day of July, 2018, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached service list in the manner specified either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

By: ___s/ Matthew L. Lines___

Matthew L. Lines

## SERVICE LIST

## HOMESTEAD HOSPITAL, INC. ET AL. vs. GROUP & PENSION ADMINISTRATORS, INC.,

## CASE NO.: 1:18-cv-21618-DPG

### United States District Court, Southern District of Florida

Jezabel P. Lima, Esq.
LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 S. Biscayne Boulevard
22nd Floor – Miami Center
Miami, Florida 33131
jl@lklsg.com
cod@lklsg.com