HOMESTEAD HOSPITAL, INC., WEST
KENDALL BAPTIST HOSPITAL, INC.,
BAPTIST HOSPITAL OF MIAMI, INC.,
SOUTH MIAMI HOSPITAL, INC., BHS
AMBULATORY SURGERY CENTER AT
BAPTIST, LTD. D/B/A MEDICAL ARTS
SURGERY CENTER, DOCTORS
HOSPITAL, INC. and BAPTIST SURGERY
AND ENDOSCOPY CENTERS, L.L.C.,

Case No. 1:18-cv-21618-DPG

Plaintiffs,

v.

GROUP & PENSION ADMINISTRATOR,
INC., Defendant.

_____/

## AMENDED COMPLAINT

Plaintiffs, Homestead Hospital, Inc. (the "Homestead Hospital"), West Kendall Baptist Hospital, Inc. ("West Kendall Hospital"), Baptist Hospital of Miami, Inc. ("Baptist Hospital"), South Miami Hospital, Inc. ("South Miami Hospital"), BHS Ambulatory Surgery Center at Baptist, Ltd. d/b/a Medical Arts Surgery Center ("Medical Arts Center"), Doctors Hospital, Inc. ("Doctors Hospital") and Baptist Surgery and Endoscopy Centers, L.L.C. ("Baptist Surgery") [Homestead Hospital, West Kendall Hospital, Baptist Hospital, South Miami Hospital, Medical Arts Center, Doctors Hospital and Baptist Surgery, collectively, where appropriate, are referred to as the "Hospitals"], hereby sue Defendant, Group & Pension Administrator, Inc. ("Administrator"), and allege as follows:

# GENERAL ALLEGATIONS

*Nature of this Action*

1.      This is an action by health care providers to recover from a benefit plan administrator the fair market value of medical services rendered to benefit plan members. The plan administrator did not pay the health care providers' standard rates but, instead paid the claims at arbitrary and unilaterally reduced rates that amount to tiny fractions of the claims. There is no issue as to the members' entitlement to coverage. All of the claims at issue were accepted by the plan administrator as covered claims and all were paid by the plan administrator, albeit at very small fractional amounts. The health care providers bring this action to recover the difference between what they have been paid and what they are owed. As such, this is an action over the *rate* of reimbursement not the *right* to reimbursement.

*Parties*

2.      Homestead Hospital is a not-for-profit corporation organized and existing under the laws of the State of Florida with its principal place of business in Miami-Dade County, Florida.

3.      West Kendall Hospital is a not-for-profit corporation organized and existing under the laws of the State of Florida with its principal place of business in Miami-Dade County, Florida.

4.      Baptist Hospital is a not-for-profit corporation organized and existing under the laws of the State of Florida with its principal place of business in Miami-Dade County, Florida.

5.      South Miami Hospital is a not-for-profit corporation organized and existing under the laws of the State of Florida with its principal place of business in Miami-Dade County, Florida.

6.      Medical Arts Center is a Florida limited partnership organized and existing under the laws of the State of Florida with its principal place of business in Miami-Dade County, Florida.

7.      Doctors Hospital is a not-for-profit corporation organized and existing under the laws of

the State of Florida with its principal place of business in Miami-Dade County, Florida.

8.  Baptist Surgery is a Florida limited liability company organized and existing under the laws of the State of Florida with its principal place of business in Miami-Dade County, Florida.

9.  Administrator is a for-profit corporation organized and existing under the laws of the State of Texas and is registered with the Florida Secretary of State to conduct business in Florida.

*Jurisdiction and Venue*

10. Administrator is engaged in substantial and not isolated activity within the State of Florida.

11. Administrator' substantial and not isolated activities within the State of Florida relate to or gave rise to the Hospitals' causes of action alleged herein and Administrator' contacts within the State of Florida are such that Administrator should reasonably anticipate being haled into court in Florida.

12. This Court has subject matter jurisdiction over this matter as the amount in controversy exceeds $75,000.00, exclusive of interest, costs and attorneys' fees, and there is complete diversity.

13. Venue is properly laid in Miami-Dade County, Florida because the causes of action set forth herein accrued in Miami-Dade County, Florida.

*Relation of the Parties*

14. The Hospitals (known as "providers" in the industry) provide hospital-based, health care services to residents of Miami-Dade County and charge to patients and their health insurance companies (known as "payors" in the industry) the reasonable value of those services.

15.     Administrator operates one or more benefit plans providing coverage to members of the plans for medical expenses incurred by the members and paying those benefits directly to providers such as the Hospitals.

16.     All of the claims for medical services at issue in this action already have been adjudicated by Administrator and determined to be covered services.

*The Partially Paid Claims*

17.     On February 24, 2017, L.F.[1] received and Homestead Hospital provided medical services with a fair market value of $4,017. Homestead Hospital assigned to this account the following identifying number, 5548753. [Hereinafter, this patient visit and corresponding account are referred to by the last four digits of this account number, the "8753 Visit" or "8753 Account"].

18.     At the time of the 8753 Visit, L.F. was covered by one or more benefit plans being administered by Administrator. Homestead Hospital submitted a claim to Administrator for payment of the 8753 Account. Administrator accepted responsibility for paying the 8753 Account, applied a patient deductible or copay in the amount of $1,000 and then made a partial payment in the amount of $89.87, leaving an unpaid balance of $2,927.13.

19.     On January 15, 2017, T.W. received and Homestead Hospital provided medical services with a fair market value of $35,565. Homestead Hospital assigned to this account the following identifying number, 455060. [Hereinafter, this patient visit and corresponding account are referred to by the last four digits of this account number, the "5060 Visit" or "5060 Account"].

20.     At the time of the 5060 Visit, T.W. was covered by one or more benefit plans being administered by Administrator. Homestead Hospital submitted a claim to Administrator for payment of the 5060 Account. Administrator accepted responsibility for paying the 5060

---

[1]     Initials have been substituted for the names of patients to protect patient identity.

Account, applied a patient deductible or copay in the amount of $1,000 and then made a partial payment in the amount of $9,798.57, leaving an unpaid balance of $26,766.43.

21.     On November 19, 2016, T.M. received and Baptist Hospital provided medical services with a fair market value of $14,563. Baptist Hospital assigned to this account the following identifying number, 333035. [Hereinafter, this patient visit and corresponding account are referred to by the last four digits of this account number, the "3035 Visit" or "3035 Account"].

22.     At the time of the 3035 Visit, T.M. was covered by one or more benefit plans being administered by Administrator. Baptist Hospital submitted a claim to Administrator for payment of the 3035 Account. Administrator accepted responsibility for paying the 3035 Account, applied a patient deductible or copay in the amount of $1,000 and then made a partial payment in the amount of $2,502.19, leaving an unpaid balance of $11,060.81.

23.     On October 15, 2016, C.W. received and Homestead Hospital provided medical services with a fair market value of $6,044. Homestead Hospital assigned to this account the following identifying number, 278016. [Hereinafter, this patient visit and corresponding account are referred to by the last four digits of this account number, the "8016 Visit" or "8016 Account"].

24.     At the time of the 8016 Visit, C.W. was covered by one or more benefit plans being administered by Administrator. Homestead Hospital submitted a claim to Administrator for payment of the 8016 Account. Administrator accepted responsibility for paying the 8016 Account, applied a patient deductible or copay in the amount of $1,000 and then made a partial payment in the amount of $405.16, leaving an unpaid balance of $4,638.84.

25.     On December 2, 2016, D.W. received and Baptist Hospital provided medical services with a fair market value of $5,928. Baptist Hospital assigned to this account the following identifying

number, 359752. [Hereinafter, this patient visit and corresponding account are referred to by the last four digits of this account number, the "9752 Visit" or "9752 Account"].

26.     At the time of the 9752 Visit, D.W. was covered by one or more benefit plans being administered by Administrator. Baptist Hospital submitted a claim to Administrator for payment of the 9752 Account. Administrator accepted responsibility for paying the 9752 Account and made a partial payment in the amount of $970.33, leaving an unpaid balance of $4,957.67.

27.     On August 3, 2016, W.M. received and Homestead Hospital provided medical services with a fair market value of $9,974. Homestead Hospital assigned to this account the following identifying number, 234937. [Hereinafter, this patient visit and corresponding account are referred to by the last four digits of this account number, the "4937 Visit" or "4937 Account"].

28.     At the time of the 4937 Visit, W.M. was covered by one or more benefit plans being administered by Administrator. Homestead Hospital submitted a claim to Administrator for payment of the 4937 Account. Administrator accepted responsibility for paying the 4937 Account, applied a patient deductible or copay in the amount of $500 and then made a partial payment in the amount of $1,128.75, leaving an unpaid balance of $8,345.25.

29.     On September 29, 2016 through October 2, 2016, B.M. received and South Miami Hospital provided medical services with a fair market value of $76,898. South Miami Hospital assigned to this account the following identifying number, 536454994. [Hereinafter, this patient visit and corresponding account are referred to by the last four digits of this account number, the "4994 Visit" or "4994 Account"].

30.     At the time of the 4994 Visit, B.M. was covered by one or more benefit plans being administered by Administrator. South Miami Hospital submitted a claim to Administrator for payment of the 4994 Account. Administrator accepted responsibility for paying the 4994 Account

and made a partial payment in the amount of $21,783.28, leaving an unpaid balance of $55,114.72.

31. On August 5, 2016 through August 9, 2016, M.C. received and West Kendall Hospital provided medical services with a fair market value of $105,919. West Kendall Hospital assigned to this account the following identifying number, 203709902. [Hereinafter, this patient visit and corresponding account are referred to by the last four digits of this account number, the "9902 Visit" or "9902 Account"].

32. At the time of the 9902 Visit, M.C. was covered by one or more benefit plans being administered by Administrator. West Kendall Hospital submitted a claim to Administrator for payment of the 9902 Account. Administrator accepted responsibility for paying the 9902 Account and made a partial payment in the amount of $20,371.27, leaving an unpaid balance of $85,547.73.

33. On November 14, 2016, L.A. received and Medical Arts Center provided medical services with a fair market value of $28,816. Medical Arts Center assigned to this account the following identifying number, 43977073. [Hereinafter, this patient visit and corresponding account are referred to by the last four digits of this account number, the "7073 Visit" or "7073 Account"].

34. At the time of the 7073 Visit, L.A. was covered by one or more benefit plans being administered by Administrator. Medical Arts Center submitted a claim to Administrator for payment of the 7073 Account. Administrator accepted responsibility for paying the 7073 Account and made a partial payment in the amount of $3,699.26, leaving an unpaid balance of $24,191.92.

35. On August 4, 2016, W.M. received and South Miami Hospital provided medical services with a fair market value of $9,800. South Miami Hospital assigned to this account the following identifying number, 536500721. [Hereinafter, this patient visit and corresponding account are

referred to by the last four digits of this account number, the "0721 Visit" or "0721 Account"].

36.     At the time of the 0721 Visit, W.M. was covered by one or more benefit plans being administered by Administrator. South Miami Hospital submitted a claim to Administrator for payment of the 0721 Account. Administrator accepted responsibility for paying the 0721 Account and made a partial payment in the amount of $3,681.14, leaving an unpaid balance of $6,118.86.

37.     On April 28, 2017 through May 6, 2017, R.A. received and Homestead Hospital provided medical services with a fair market value of $64,074. Homestead Hospital assigned to this account the following identifying number, 771761. [Hereinafter, this patient visit and corresponding account are referred to by the last four digits of this account number, the "1761 Visit" or "1761 Account"].

38.     At the time of the 1761 Visit, R.A. was covered by one or more benefit plans being administered by Administrator. Homestead Hospital submitted a claim to Administrator for payment of the 1761 Account. Administrator accepted responsibility for paying the 1761 Account and made a partial payment in the amount of $18745.31, leaving an unpaid balance of $45,328.69.

39.     On September 27, 2016 through September 29, 2016, E.M. received and Homestead Hospital provided medical services with a fair market value of $38,136. Homestead Hospital assigned to this account the following identifying number, 259400. [Hereinafter, this patient visit and corresponding account are referred to by the last four digits of this account number, the "9400 Visit" or "9400 Account"].

40.     At the time of the 9400 Visit, E.M. was covered by one or more benefit plans being administered by Administrator. E.M. submitted a claim to Administrator for payment of the 9400 Account. Administrator accepted responsibility for paying the 9400 Account, applied a patient co-pay or deductible of $3,610.29 and made a partial payment in the amount of $8,058.46, leaving an

unpaid balance of $26,467.25.

41.     On February 4, 2017, T.M. received and South Miami Hospital provided medical services with a fair market value of $5,246. South Miami Hospital assigned to this account the following identifying number, 503475. [Hereinafter, this patient visit and corresponding account are referred to by the last four digits of this account number, the "3475 Visit" or "3475 Account"].

42.     At the time of the 3475 Visit, T.M. was covered by one or more benefit plans being administered by Administrator. South Miami Hospital submitted a claim to Administrator for payment of the 3475 Account. Administrator accepted responsibility for paying the 3475 Account, applied a patient deductible or co-pay of $1,000 and made a partial payment in the amount of $731.93, leaving an unpaid balance of $3,514.07.

43.     On October 28, 2016, C.L. received and South Miami Hospital provided medical services with a fair market value of $681. South Miami Hospital assigned to this account the following identifying number, 536801442. [Hereinafter, this patient visit and corresponding account are referred to by the last four digits of this account number, the "1442 Visit" or "1442 Account"].

44.     At the time of the 1442 Visit, C.L. was covered by one or more benefit plans being administered by Administrator. South Miami Hospital submitted a claim to Administrator for payment of the 1442 Account. Administrator accepted responsibility for paying the 1442 Account, applied a $48 deductible or co-pay and made a partial payment in the amount of $191.97, leaving an unpaid balance of $441.03.

45.     On November 4, 2016, F.L. received and South Miami Hospital provided medical services with a fair market value of $364. South Miami Hospital assigned to this account the following identifying number, 536853641. [Hereinafter, this patient visit and corresponding account are referred to by the last four digits of this account number, the "3641 Visit" or "3641 Account"].

46.     At the time of the 3641 Visit, F.L. was covered by one or more benefit plans being administered by Administrator. South Miami Hospital submitted a claim to Administrator for payment of the 3641 Account. Administrator accepted responsibility for paying the 3641 Account, applied a deductible or co-pay of $36.29 and made a partial payment in the amount of $181.46, leaving an unpaid balance of $182.54.

47.     On February 13, 2018, A.F. received and Doctors Hospital provided medical services with a fair market value of $23,659. Doctors Hospital assigned to this account the following identifying number, 2059847. [Hereinafter, this patient visit and corresponding account are referred to by the last four digits of this account number, the "9847 Visit" or "9847 Account"].

48.     At the time of the 9847 Visit, A.F. was covered by one or more benefit plans being administered by Administrator. Doctors Hospital submitted a claim to Administrator for payment of the 9847 Account. Administrator accepted responsibility for paying the 9847 Account and made a partial payment in the amount of $2,517.58, leaving an unpaid balance of $21,177.42.

49.     On August 18, 2017, S.I. received and Homestead Hospital provided medical services with a fair market value of $7,485. Homestead Hospital assigned to this account the following identifying number, 1225695. [Hereinafter, this patient visit and corresponding account are referred to by the last four digits of this account number, the "5695 Visit" or "5695 Account"].

50.     At the time of the 5695 Visit, S.I. was covered by one or more benefit plans being administered by Administrator. Homestead Hospital submitted a claim to Administrator for payment of the 5695 Account. Administrator accepted responsibility for paying the 5695 Account, but adjusted the rate of payment to $776.01 and had the patient pay that amount as a deductible or co-pay, leaving an unpaid balance of $6,708.99.

51.     On March 23, 2017 through March 24, 2017, M.M. received and West Kendall Hospital provided medical services with a fair market value of $10,257. West Kendall Hospital assigned to this account the following identifying number, 204274245. [Hereinafter, this patient visit and corresponding account are referred to by the last four digits of this account number, the "4245 Visit" or "4245 Account"].

52.     At the time of the 4245 Visit, M.M. was covered by one or more benefit plans being administered by Administrator. West Kendall Hospital submitted a claim to Administrator for payment of the 4245 Account. Administrator accepted responsibility for paying the 4245 Account, applied a deductible or co-pay of $500 and made a partial payment in the amount of $177.32, leaving an unpaid balance of $10,079.78.

53.     On April 27, 2018, D.D. received and Baptist Surgery provided medical services with a fair market value of $3,261.00. Baptist Surgery assigned to this account the following identifying number, 2430185. [Hereinafter, this patient visit and corresponding account are referred to by the last four digits of this account number, the "0185 Visit" or "0185 Account"].

54.     At the time of the 0185 Visit, D.D. was covered by one or more benefit plans being administered by Administrator. Baptist Surgery submitted a claim to Administrator for payment of the 0185 Account. Administrator accepted responsibility for paying the 0185 Account and made a partial payment in the amount of $424.94, leaving an unpaid balance of $2,836.06.

55.     On January 15, 2018, K.W. received and Homestead Hospital provided medical services with a fair market value of $129,471. Homestead Hospital assigned to this account the following identifying number, 1905331. [Hereinafter, this patient visit and corresponding account are referred to by the last four digits of this account number, the "5331 Visit" or "5331 Account"].

56.     At the time of the 5331 Visit, K.W. was covered by one or more benefit plans being

administered by Administrator. Homestead Hospital submitted a claim to Administrator for payment of the 5331 Account. Administrator accepted responsibility for paying the 5331 Account, applied a deductible or co-pay of $1,316.43 and made a partial payment in the amount of $35,010.01, leaving an unpaid balance of $80,197.46.

57.     On May 29, 2018, A.M. received and Baptist Hospital provided medical services with a fair market value of $65,812.00. Baptist Hospital assigned to this account the following identifying number, 2590797. [Hereinafter, this patient visit and corresponding account are referred to by the last four digits of this account number, the "0797 Visit" or "0797 Account"].

58.     At the time of the 0797 Visit, A.M. was covered by one or more benefit plans being administered by Administrator. Baptist Hospital submitted a claim to Administrator for payment of the 0797 Account. Administrator accepted responsibility for paying the 0797 Account and made a partial payment in the amount of $2,600, leaving an unpaid balance of $63,212.00.

59.     On February 14, 2018, S.F. received and Homestead Hospital provided medical services with a fair market value of $10,865.00. Homestead Hospital assigned to this account the following identifying number, 2065223. [Hereinafter, this patient visit and corresponding account are referred to by the last four digits of this account number, the "_ Visit" or "_ Account"].

60.     At the time of the 5223 Visit, S.F. was covered by one or more benefit plans being administered by Administrator. Homestead Hospital submitted a claim to Administrator for payment of the 5223 Account. Administrator accepted responsibility for paying the 5223 Account, applied a deductible or co-pay of $786.79 and adjusted the remaining balance as being less than the applicable co-pay, leaving an unpaid balance of $10,078.21.

61.     On May 28, 2018, A.S. received and West Kendall Hospital provided medical services with a fair market value of $14,328.00. West Kendall Hospital assigned to this account the

following identifying number, 1003682080. [Hereinafter, this patient visit and corresponding account are referred to by the last four digits of this account number, the "2080 Visit" or "2080 Account"].

62.     At the time of the 2080 Visit, A.S. was covered by one or more benefit plans being administered by Administrator. West Kendall Hospital submitted a claim to Administrator for payment of the 2080 Account. Administrator accepted responsibility for paying the 2080 Account and adjusted the amount they would "allow" to $1,457.61, which amount was within the patient's responsibility as a copay or deductible, leaving an unpaid balance of $12,870.39.

63.     On May 10, 2018, A.F. received and Doctors Hospital provided medical services with a fair market value of $12,523.00. Doctors Hospital assigned to this account the following identifying number, 2497818. [Hereinafter, this patient visit and corresponding account are referred to by the last four digits of this account number, the "7818 Visit" or "7818 Account"].

64.     At the time of the 7818 Visit, A.F. was covered by one or more benefit plans being administered by Administrator. Doctors Hospital submitted a claim to Administrator for payment of the 7818 Account. Administrator accepted responsibility for paying the 7818 Account and made a partial payment in the amount of $1,208.46, leaving an unpaid balance of $11,314.54.

65.     Based on these partial payments, the Baptist Heath Entities have been left unpaid with respect to the 0721, 1442, 1761, 3035, 3475, 3641, 4937, 4994, 5060, 7073, 8016, 8753, 9400, 9752, 7818, 2080, 5223, 0797, 5331, 0185, 4245, 5695, 9847 and 9902 Accounts as follows:

| First | Last | Account # | Provider | DOS | Amount Due |
|-------|------|-----------|----------|-----|------------|
| L. | F. | 5548753 | Homestead Hospital | 2/24/2017 | $2,927.13 |
| T. | W. | 455060 | Homestead Hospital | 1/15/2017 | $26,766.43 |
| C. | W. | 278016 | Homestead Hospital | 10/15/2016 | $4,638.84 |
| W. | M. | 234937 | Homestead Hospital | 8/3/2016 | $8,345.25 |
| R. | A. | 771761 | Homestead Hospital | 4/28/17-5/6/17 | $45,328.69 |
| E. | M. | 259400 | Homestead Hospital | 9/27/16-9/29/16 | $26,467.25 |

| First | Last | Account # | Provider | DOS | Amount Due |
|-------|------|-----------|----------|-----|-----------|
| S. | I. | 1225695 | Homestead Hospital | 8/18/2017 | $8,599.20 |
| K. | W. | 1905331 | Homestead Hospital | 1/15/2018-1/25/2018 | $80,197.46 |
| S. | F. | 2065223 | Homestead Hospital | 2/14/2018 | $10,865.00 |
| | | | **Subtotal Homestead Hospital** | | **$214,135.25** |

| First | Last | Account # | Provider | DOS | Amount Due |
|-------|------|-----------|----------|-----|-----------|
| W. | M. | 536500721 | South Miami Hospital | 8/4/2016 | $6,118.86 |
| B. | M. | 536454994 | South Miami Hospital | 9/29/2016 - 10/2/2016 | $55,114.72 |
| T. | M. | 503475 | South Miami Hospital | 2/4/2017 | $3,514.07 |
| C. | L. | 536801442 | South Miami Hospital | 10/28/2016 | $441.03 |
| F. | L. | 536853641 | South Miami Hospital | 11/4/2016 | $182.54 |
| | | | **Subtotal South Miami Hospital** | | **$65,371.22** |

| First | Last | Account # | Provider | DOS | Amount Due |
|-------|------|-----------|----------|-----|-----------|
| T. | M. | 333035 | Baptist Hospital | 11/19/2016 | $11,060.81 |
| D. | W. | 359752 | Baptist Hospital | 12/2/2016 | $4,957.67 |
| A. | M. | 2590797 | Baptist Hospital | 5/29/2018-5/31/2018 | $63,212.00 |
| | | | **Subtotal Baptist Hospital** | | **$79,230.48** |

| First | Last | Account # | Provider | DOS | Amount Due |
|-------|------|-----------|----------|-----|-----------|
| M. | C. | 203709902 | West Kendall Hospital | 8/5/2016-8/9/2016 | $85,547.73 |
| M. | M. | 204274245 | West Kendall Hospital | 3/23/2017 | $10,079.78 |
| A. | S. | 1003682080 | West Kendall Hospital | 5/28/2018 | $14,328.00 |
| | | | **Subtotal West Kendall Hospital** | | **$109,955.51** |

| First | Last | Account # | Provider | DOS | Amount Due |
|-------|------|-----------|----------|-----|-----------|
| L. | A. | 43977073 | Medical Arts Center | 11/14/2016 | $24,191.92 |
| | | | **Subtotal Medical Arts Center** | | **$24,191.92** |

| First | Last | Account # | Provider | DOS | Amount Due |
|-------|------|-----------|----------|-----|-----------|
| A. | F. | 2059847 | Doctors Hospital | 12/13/2018-12-16/2018 | $21,177.42 |

| First | Last | Account # | Provider | DOS | Amount Due |
|-------|------|-----------|----------|-----|------------|
| A. | F. | 2497818 | Doctors Hospital | 5/10/2018 | $11,314.54 |
| | | | **Subtotal Doctors Hospital** | | **$32,491.96** |

| First | Last | Account # | Provider | DOS | Amount Due |
|-------|------|-----------|----------|-----|------------|
| D. | D. | 2430185 | Baptist Surgery | 4/27/2018 | $2,836.06 |
| | | | **Subtotal Baptist Surgery** | | **$2,836.06** |

| | |
|---|---|
| **Grand Total** | **$528,212.40** |

66.     All conditions precedent to this action have occurred, have been performed or waived or would be futile.

67.     The Hospitals have retained undersigned counsel to represent them in this action and are obligated to pay a reasonable fee therefor.

## ALLEGATIONS COMMON TO ALTERNATIVE COUNTS
## (COUNTS II THROUGH IV)

68.     At all material times, none of the Hospitals has or had any written participation agreement with Administrator, making Administrator a "non-par" payor.

69.     Because Administrator is a non-par payor, the Hospitals have never agreed to be bound by Administrator' reimbursement policies or rate schedules.

70.     Administrator provides identification cards to the members of its various health benefit plans. Those cards identify Administrator as the party responsible for paying providers for medical services provided to plan members. Administrator intends for members to provide their identification cards to providers and for providers to rely on those identification cards in rendering medical services to their members. The identification cards do not contain any limitations as to the amounts that will be reimbursed to providers by Administrator and do not disclaim Administrator' common law liability to providers to pay the reasonable value of services provided to members.

71.     At the time of rendering medical services, the Hospitals contacted Administrator and confirmed with Administrator that each of the members were, in fact, members of one or more of Administrator's plans and that Administrator was providing coverage for the services. At no time did Administrator advise that the coverage it was providing would be restricted unilaterally and arbitrarily to a fraction of the Hospitals charges by use of what Administrator in later communications describes as an "allowable claim limit."

72.     At the time of rendering medical services, Administrator transmitted to the Hospitals facsimile messages containing multiple pages of information as to the coverage available to each of the members' whose eligibility had been and was being confirmed by such messages. Those messages contained information that the Hospitals charges would be paid at rates of between 80% and 100%, depending on the member. What those messages did not contain was the phrase "allowable claims limit" or any other information that would put the Hospitals on notice of the Administrator's practice of arbitrarily and unilaterally reducing the amounts being charged by the Hospitals before applying the 80% to 100% payment rates set forth in the messages.

73.     Because coverage had been confirmed with no information by which to understand that the coverage would only apply to the tiny fraction of the total charges remaining after Administrator had arbitrarily and unilaterally reducing the total charges pursuant to Administrator's "allowable claims limit" methodology, the Hospitals did not make other payment arrangements with the patients during their stay after their medical conditions had been stabilized.

74.     At the time of rendering medical services, Administrator's personnel advised the Hospitals' personnel over the telephone as to the coverage available to each of the members' whose eligibility had been confirmed by the same telephone communications. Those communications informed the Hospitals that their charges would be paid at rates of between 80%

and 100%, depending on the member. What those communications did not contain were the phrase "allowable claims limit" or any other information that would put the Hospitals on notice of the Administrator's practice of arbitrarily and unilaterally reducing the amounts being charged by the Hospitals before applying the 80% to 100% payment rates as being reported to the Hospital by Administrator's personnel.

75.     Because coverage had been confirmed with no information by which to understand that the coverage would only apply to the tiny fraction of the total charges remaining after Administrator had arbitrarily and unilaterally reduced the total charges pursuant to Administrator's "allowable claims limit" methodology, the Hospitals did not make other payment arrangements with the patients during their stay after their medical conditions had been stabilized.

## COUNT I
### (Breach of Contract)

76.     The Hospitals incorporate by reference as though fully set forth herein the allegations set forth in paragraphs 1 through 67 above.

77.     At all times material hereto, the Hospitals had a Memorandum of Agreement ("MOA") between themselves and MultiPlan, Inc. ("MultiPlan"), pursuant to which MultiPlan agreed on behalf of its clients to pay and the Hospitals agreed to accept a certain discount from their full billed charges.

78.     A true and correct copy of the MOA is attached as Exhibit "A."[2]

79.     At all times material hereto, Administrator was an identified "Client" of MultiPlan that was bound by the terms of the MOA.

---

[2]     The copy attached to this Amended Complaint has been redacted to remove the specific pricing agreed to between the parties because that pricing information is a trade secret. An unredacted copy of the contract has been produced to Administrator herein confidentially under the protective order already in place in this action. *See* D.E. # 18.

80.     The MOA is a valid and binding contract between Administrator and the Hospitals as to the discounted rates Administrator would pay to the Hospitals for the services the Hospitals provided to the members of Administrators' plans.

81.     Administrator has breached the MOA by failing and refusing to pay the Hospitals for their services at the agreed-upon rates set forth in the MOA.

82.     The Hospitals have been damaged by the Administrator's breaches of the MOA.

        WHEREFORE, Plaintiffs, Homestead Hospital, Inc., West Kendall Baptist Hospital, Inc., Baptist Hospital of Miami, Inc., South Miami Hospital, Inc., BHS Ambulatory Surgery Center at Baptist, Ltd. d/b/a Medical Arts Surgery Center, Doctors Hospital, Inc. and Baptist Surgery and Endoscopy Centers, L.L.C., demand judgment in their favor and against Defendant, Group & Pension Administrator, Inc., for the full amounts of their damages, along with an award of prejudgment interest, costs and attorneys' fees, pursuant to applicable law, and all other and such further relief as this Court deems appropriate under the circumstances.

## COUNT II
### (Breach of Implied-In-Fact Contract)

83.     The Hospitals incorporate by reference as though fully set forth herein the allegations set forth in paragraphs 1 through 75 above.

84.     At all material times, Administrator knew that it was a non-par payor with respect to the Hospitals and that the Hospitals were entitled to and expected to be paid the reasonable value of their services in the marketplace.

85.     At all material times, Administrator knew that it had not secured any agreement from the Hospitals to accept discounted rates from Administrator.

86.     At all material times, Administrator knew, understood and authorized members of the benefit plans to seek and receive medical services from the Hospitals and accepted responsibility

and impliedly agreed to pay the Hospitals the reasonable value of those services, including for the 0721, 1442, 1761, 3035, 3475, 3641, 4937, 4994, 5060, 7073, 8016, 8753, 9400, 9752, 7818, 2080, 5223, 0797, 5331, 0185, 4245, 5695, 9847 and 9902 Accounts.

87.     At all material times, Administrator provided identification cards to each of their members and those cards were presented to the Hospitals by the members at the time that medical services were provided to the members, including for the 0721, 1442, 1761, 3035, 3475, 3641, 4937, 4994, 5060, 7073, 8016, 8753, 9400, 9752, 7818, 2080, 5223, 0797, 5331, 0185, 4245, 5695, 9847 and 9902 Accounts. Each of these cards indicated that Administrator would be responsible for paying for the medical services with the exception of listed copays or deductibles. None of these cards gave notice that Administrator would not pay the reasonable value of the services provided to the members.

88.     Administrator further acknowledged its responsibility for payment and its approval of the Hospitals' rendering of professional services to the plan members by regularly and consistently paying the Hospitals for their services, including the 0721, 1442, 1761, 3035, 3475, 3641, 4937, 4994, 5060, 7073, 8016, 8753, 9400, 9752, 7818, 2080, 5223, 0797, 5331, 0185, 4245, 5695, 9847 and 9902 Accounts, albeit at rates lower than what was owed.

89.     Based on the facts set forth herein, Administrator impliedly agreed to pay the Hospitals the reasonable value in the marketplace of the health care services rendered to the plan members, including the 0721, 1442, 1761, 3035, 3475, 3641, 4937, 4994, 5060, 7073, 8016, 8753, 9400, 9752, 7818, 2080, 5223, 0797, 5331, 0185, 4245, 5695, 9847 and 9902 Accounts.

90.     At all material times, Administrator has regularly and consistently issued payment on the claims the Hospitals submitted for health care services rendered to plan members, albeit at rates less than the reasonable value of those services in the marketplace that Administrator impliedly

agreed to pay, including the 0721, 1442, 1761, 3035, 3475, 3641, 4937, 4994, 5060, 7073, 8016, 8753, 9400, 9752, 7818, 2080, 5223, 0797, 5331, 0185, 4245, 5695, 9847 and 9902 Accounts.

91.     Administrator breached its agreement with each of the Hospitals by failing to pay the reasonable value of the health care services provided to plan members and, instead, paying a discounted amount based on Administrator' own unilaterally determined pricing policies to which the Hospitals never agreed, including the 0721, 1442, 1761, 3035, 3475, 3641, 4937, 4994, 5060, 7073, 8016, 8753, 9400, 9752, 7818, 2080, 5223, 0797, 5331, 0185, 4245, 5695, 9847 and 9902 Accounts.

92.     The Hospitals have been damaged by Administrator' breaches of its implied agreements to pay the Baptist Entities the reasonable value of the health care services provided to plan members with respect to the 0721, 1442, 1761, 3035, 3475, 3641, 4937, 4994, 5060, 7073, 8016, 8753, 9400, 9752, 7818, 2080, 5223, 0797, 5331, 0185, 4245, 5695, 9847 and 9902 Accounts.

WHEREFORE, Plaintiffs, Homestead Hospital, Inc., West Kendall Baptist Hospital, Inc., Baptist Hospital of Miami, Inc., South Miami Hospital, Inc., BHS Ambulatory Surgery Center at Baptist, Ltd. d/b/a Medical Arts Surgery Center, Doctors Hospital, Inc. and Baptist Surgery and Endoscopy Centers, L.L.C., demand judgment in their favor and against Defendant, Group & Pension Administrator, Inc., for the full amounts of their damages, along with an award of prejudgment interest, costs and attorneys' fees, pursuant to applicable law, and all other and such further relief as this Court deems appropriate under the circumstances.

## COUNT III
### (Unjust Enrichment/Breach of Implied-In-Law Contract)

93.     The Hospitals incorporate by reference as though fully set forth herein the allegations set forth in paragraphs 1 through 75 above.

94.     The Baptist Entities conferred a direct benefit on Administrator by providing valuable medical services to members of the benefit plans with the authorization, knowledge, and/or approval of Administrator, including the 0721, 1442, 1761, 3035, 3475, 3641, 4937, 4994, 5060, 7073, 8016, 8753, 9400, 9752, 7818, 2080, 5223, 0797, 5331, 0185, 4245, 5695, 9847 and 9902 Accounts.

95.     Each of the medical services were covered by one or more of Administrator' plans, and the provision of medical services to the members directly benefited Administrator by fulfilling Administrator's duties to its members to provide for such medical services, including the 0721, 1442, 1761, 3035, 3475, 3641, 4937, 4994, 5060, 7073, 8016, 8753, 9400, 9752, 7818, 2080, 5223, 0797, 5331, 0185, 4245, 5695, 9847 and 9902 Accounts.

96.     In approving the Hospitals' provision of medical services to the members, Administrator was aware that the Hospitals expected to be paid by Administrator for those services at the reasonable value of those medical services in the marketplace under quantum meruit, including the 0721, 1442, 1761, 3035, 3475, 3641, 4937, 4994, 5060, 7073, 8016, 8753, 9400, 9752, 7818, 2080, 5223, 0797, 5331, 0185, 4245, 5695, 9847 and 9902 Accounts.

97.     Administrator's liability as the party responsible for payment to the Baptist Entities for services provided to the members of the plans administered by Administrator is established by Administrator' approval of the services and payment for the services, albeit at an amount less than what was owed, including the 0721, 1442, 1761, 3035, 3475, 3641, 4937, 4994, 5060, 7073, 8016, 8753, 9400, 9752, 7818, 2080, 5223, 0797, 5331, 0185, 4245, 5695, 9847 and 9902 Accounts.

98.     Administrator voluntarily accepted, retained and enjoyed the benefits conferred on it by the Hospitals, knowing that the Hospitals expected to be paid the reasonable value of their

services, including the 0721, 1442, 1761, 3035, 3475, 3641, 4937, 4994, 5060, 7073, 8016, 8753, 9400, 9752, 7818, 2080, 5223, 0797, 5331, 0185, 4245, 5695, 9847 and 9902 Accounts.

99. Administrator has failed to pay the Hospitals for the reasonable value of the benefits conferred on Administrator by the Hospitals. As a result, Administrator has withheld for itself monies that it should have paid to the Hospitals and has received an unjustified windfall, including the 0721, 1442, 1761, 3035, 3475, 3641, 4937, 4994, 5060, 7073, 8016, 8753, 9400, 9752, 7818, 2080, 5223, 0797, 5331, 0185, 4245, 5695, 9847 and 9902 Accounts.

100. By underpaying the Hospitals, Administrator has been unjustly enriched. Under the circumstances, it is unjust and inequitable for Administrator to retain the benefits it has received without paying the value of those benefits to the Hospitals, including the 0721, 1442, 1761, 3035, 3475, 3641, 4937, 4994, 5060, 7073, 8016, 8753, 9400, 9752, 7818, 2080, 5223, 0797, 5331, 0185, 4245, 5695, 9847 and 9902 Accounts.

WHEREFORE, Plaintiffs, Homestead Hospital, Inc., West Kendall Baptist Hospital, Inc., Baptist Hospital of Miami, Inc., South Miami Hospital, Inc., BHS Ambulatory Surgery Center at Baptist, Ltd. d/b/a Medical Arts Surgery Center, Doctors Hospital, Inc. and Baptist Surgery and Endoscopy Centers, L.L.C., demand judgment in their favor and against Defendant, Group & Pension Administrator, Inc., for the full amounts of their damages, along with an award of prejudgment interest, costs and attorneys' fees, pursuant to applicable law, and all other and such further relief as this Court deems appropriate under the circumstances.

## COUNT IV
### (Promissory Estoppel)

101. The Hospitals incorporate by reference as though fully set forth herein the allegations set forth in paragraphs 1 through 75 above.

102. The patients for the 0721, 1442, 1761, 3035, 3475, 3641, 4937, 4994, 5060, 7073, 8016, 8753, 9400, 9752, 7818, 2080, 5223, 0797, 5331, 0185, 4245, 5695, 9847 and 9902 Visits presented identification cards to the Hospitals, which cards had been provided to the patients by Administrator for the purpose of presenting same to providers in connection with the solicitation and receipt of medical services from providers.

103. Administrator knew and intended for the identification cards to be provided to and relied on by providers, such as the Hospitals, in providing medical services to the members, including for the 0721, 1442, 1761, 3035, 3475, 3641, 4937, 4994, 5060, 7073, 8016, 8753, 9400, 9752, 7818, 2080, 5223, 0797, 5331, 0185, 4245, 5695, 9847 and 9902 Visits.

104. The Hospitals provided medical services in reliance on the identification cards provided by Administrator which cards indicated that Administrator would be responsible to pay the claims and did not disclaim or indicate in any way that the Hospitals would not be paid the reasonable value of their services.

105. The Hospitals detrimentally relied on the identification cards provided by Administrator by providing medical services without concomitantly seeking to obtain some sort of payment plan or other financial arrangement for the medical services, prior to discharge of the patients.

106. Administrator should be estopped from now taking a position that they are not responsible to pay the reasonable value of the medical services provided to the members by the Hospitals.

WHEREFORE, Plaintiffs, Homestead Hospital, Inc., West Kendall Baptist Hospital, Inc., Baptist Hospital of Miami, Inc., South Miami Hospital, Inc., BHS Ambulatory Surgery Center at Baptist, Ltd. d/b/a Medical Arts Surgery Center, Doctors Hospital, Inc. and Baptist Surgery and Endoscopy Centers, L.L.C., demand judgment in their favor and against Defendant, Group & Pension Administrator, Inc., for the full amounts of their damages, along with an award of

prejudgment interest, costs and attorneys' fees, pursuant to applicable law, and all other and such further relief as this Court deems appropriate under the circumstances.

ISICOFF RAGATZ

601 Brickell Key Drive, Suite 750
Miami, Florida 33131
Tel.    (305) 373-3232
Fax    (305) 373-3233

By:    /s/Matthew L. Lines
        Eric D. Isicoff
        Florida Bar No. 372201
        isicoff@irlaw.com
        Matthew L. Lines
        Florida Bar No. 0243980
        lines@irlaw.com

*Attorneys for the Hospitals*

## **CERTIFICATE OF SERVICE**

    **I HEREBY CERTIFY** that a true and correct copy of the foregoing has been served via electronic mail this 18th day of March, 2019 upon the following:

Jezabel P. Lima, Esq.
LEVINE KELLOGG LEHMAN SCHNEIDER + GROSSMAN LLP
201 S. Biscayne Blvd.
22nd Floor – Miami Center
Miami, FL 33131
jl@lklsg.com
cod@lklsg.com

Amy M. Hoffman, Esq.
FISHER BROYLES
945 East Paces Ferry Road NE
Suite 2000
Atlanta, GA 30326
amy.hoffman@fisherbroyles.com
marycatharine.calcutt@fisherbroyles.com

        By:    /s/Matthew L. Lines
                Matthew L. Lines